UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOM CONKLIN, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-04-3195 |
| | § | |
| RONNIE CHUMLEY, | § | |
| PATSY WILLIAMS, and | § | |
| CITY OF MAGNOLIA, TEXAS, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion for Summary Judgment. After considering the parties' filings, the applicable law, and the oral arguments presented at a hearing on February 2, 2007, the Court finds that the motion, Docket No. 70, should be and hereby is **GRANTED**.

## I. BACKGROUND

This case, brought under 42 U.S.C. § 1983 and various state law causes of action, arises from an allegedly retaliatory pattern of conduct by Defendants Williams and Chumley towards Plaintiff, a former police officer in the city of Magnolia, Texas. Plaintiff claims that Defendants wrongfully effected his demotion and termination because he had publicly criticized them in the past, and because he had conducted investigations into possible civil and criminal violations by Williams and Chumley.

Plaintiff Tom Conklin, a Harris County resident, served as an officer in the City of Magnolia Police Department from November 1991 until June 19, 2006, when he was terminated. Conklin reached the rank of Sergeant in 1999.

Defendants Ronnie Chumley and Patsy Williams were both members of the Magnolia City Council for at least some period of time relevant to this suit.[1]  Both are being sued in their individual capacities as well as in their official capacities as members of the Council.  Defendant City of Magnolia is an incorporated municipality in Montgomery County, Texas.

The parties agree generally about the key events that gave rise to this lawsuit, but offer divergent accounts of secondary occurrences and, especially, the parties' motivations.  According to Plaintiff, Defendants Williams and Chumley began actively to seek his termination in early 2004.  It does appear that the City Council's attention was directed toward issues related to the police force around that time; on February 27, 2004, the Council called a meeting with police officers and staff.  Plaintiff states that at that meeting, Defendant Chumley instigated a series of complaints directed at Conklin and another officer, Boyd Crabtree.  No actions were taken against either officer after that meeting.

The controversy did not end there, however.  Plaintiff claims that in the spring and early summer of 2004, Williams and Chumley frequently pressured Chief of Police Paul Rex to fire Conklin.  In July, Chumley and Williams appear to have gathered several written complaints against Conklin.[2]  At a Council meeting on July 13, 2004, at which Conklin and his attorney were present, several officers voiced negative views about him.[3]  No immediate action was taken against Conklin, but Rex (along with City Manager Jane

---

[1] Williams has served on the Council from 1992 to the present.  Chumley was a Council member until May 2005.

[2] Conklin claims that Chumley and Williams solicited these complaints, in some cases by offering employment or other inducements.

[3] One of the agenda items for the July 13 meeting was the potential termination of Chief Rex, but the issue was tabled.

Miller) was directed to investigate the complaints. After speaking with the complainants, Miller and Rex decided not to terminate Conklin, but instead to send him to a law enforcement communications course[4] and to modify his duties. While Conklin's rank, pay, and other benefits remained intact, it does appear that he no longer functioned as second in command to Rex, or possessed active supervisory authority.

Plaintiff maintains that even after Miller and Rex made their recommendations regarding his discipline, Williams and Chumley continued to seek Conklin's termination, including by further pressuring Chief Rex. In August 2004, Rex himself appears to have become the main object of scrutiny for the Council; on August 3, the Council called for a resolution to terminate Rex's employment. A "no confidence" vote was scheduled for August 10, 2004. During the August 10 meeting, Rex and Conklin served Defendants with the instant lawsuit, the immediate object of which was to obtain a temporary restraining order to prevent Defendants from voting on Rex's termination.[5] On August 13, 2004, Judge Kenneth Hoyt denied the TRO. The no confidence vote also failed, by a vote of three to two.

According to Plaintiff, Chief Rex remained under pressure to fire Conklin through the fall of 2004. Magnolia Mayor Jimmy Thornton allegedly implied that Rex had to fire Conklin in order to keep his job, and intimated that the Council was considering amending a city ordinance to give the new City Manager the authority to fire Conklin.[6]

On June 13, 2006, Chief Rex resigned his position with the Magnolia Police Department, apparently after learning from Mayor Thornton that his employment would

---

[4] Conklin attended the course from October 18-21, 2004.
[5] As the suit was originally filed, Paul Rex was a co-Plaintiff.
[6] City Manager Jane Miller had apparently resigned her post, although it is not clear when this occurred.

3

be terminated that evening at a Council meeting.[7] Mayor Thornton assumed the role of interim police chief, and on June 14, 2006, he demoted Conklin from the rank of Sergeant to patrolman, with a corresponding reduction in wages from $19.03 per hour to $15.50. On June 19, 2006, Thornton fired Conklin.

Plaintiff alleges, in essence, that Williams and Chumley engineered his 2004 discipline and 2006 termination, as well as making repeated, defamatory statements about him in public and to the media. According to Conklin, Williams and Chumley were retaliating against him for his investigations into their conduct, as well as certain critical comments that he made publicly about them.[8] Conklin references two investigations in particular that he contends troubled Williams and Chumley.

First, beginning in 2001, Conklin was involved in an investigation surrounding the construction of Magnolia's new City Hall. Conklin's role in this inquiry appears to have been small, limited to obtaining some bank records and answering occasional questions from Chief Rex. Neither Williams nor Chumley was ever charged with any wrongdoing as a result of the City Hall investigation.

Conklin was more seriously involved in an inquiry, in the latter half of 2003, into reports lodged by Williams regarding the theft of all-terrain vehicles (ATV's) from her business. According to Conklin, Williams reported two separate thefts, and her accounts were inconsistent enough for him to suspect that she was falsifying police reports and possibly engaging in insurance fraud. The first report, of the theft of two ATV's, was made in July 2003. The incident report reflects Williams' statement that one of the

---

[7] On June 23, 2006, Rex's claims in this lawsuit were dismissed by stipulation.

[8] Conklin states that he "publicly, vocally expressed his distrust and disapproval of certain council persons', and other officials' actions and motivations, including Patsy Williams and Ronnie Chumley." Pl.'s Resp. 4. He also allegedly complained about Chumley's and Williams's interference in the administration of the police department. Pl.'s Second Am. Compl. 4.

4

ATV's belonged to a customer and was only at her business for repair, but Conklin asserts that Williams passed off both stolen vehicles as her own. According to Conklin, Williams reported a second multi-vehicle theft in August 2003. Conklin alleges that Williams changed her account of the second incident several times, adjusting the number of stolen vehicles downward each time. After investigating and consulting with Chief Rex, Conklin, Rex, and another officer reported their suspicions to the Montgomery County District Attorney in the summer of 2004.[9]

Defendants' characterization of the relevant events, unsurprisingly, differs markedly from Plaintiff's. Defendants do not deny that events such as Council meetings took place, that Conklin and Rex were among the subjects of discussion at those meetings, or that Conklin was first disciplined and, two years later, terminated. However, Defendants assert that both employment actions stemmed from legitimate, unsolicited complaints against Conklin from other officers beginning in early 2004.[10] Defendants state that the complaints centered around Conklin's problematic supervisory style, particularly his inability to communicate appropriately with the other officers. According to Defendants, Chief Rex and City Manager Miller made the decision to discipline Conklin in order to address these issues, while Conklin asserts that the corrective actions were taken strictly to appease Williams and Chumley. Similarly, Defendants contend that Conklin's ultimate termination was effected solely by Interim Chief Thornton,

---

[9] Defendants state that Conklin filed charges relating to the ATV thefts on July 29, 2004, a date that does appear on the cover sheet. Defs.' Mot. Summ. J., Ex. H. Conklin asserts that he first reported his suspicions to the DA sooner, as early as June 2004.

[10] According to Defendants, Chief Rex had himself voiced periodic concerns about Conklin. In his deposition, Rex admits that in November 2005, he went before the City Council and told them "[t]hat Tom had an attitude problem, along with another officer, and that those problems, if they couldn't be corrected, could possibly result in termination." Defs.' Mot. Summ. J., Ex. B at 11.

without any input from Williams or Chumley, and with no illegal motive on Thornton's part.

With regard to the ATV investigations, Defendants state that Conklin did not actually suspect any wrongdoing on Williams' part. Rather, Defendants argue that Conklin's purpose in reporting Williams to the District Attorney was retaliation and intimidation, noting that the report was filed on July 29, 2004, *after* Conklin had been disciplined. In fact, Williams says that she did not even learn of the report until the August 10, 2004 City Council meeting.[11] Curiously, the Montgomery County DA dismissed the case against Williams that same day.

Plaintiff's Second Amended Complaint asserts First Amendment and Due Process violations, as well as an assortment of state law claims: violations of the Texas Whistleblower Act, defamation and slander, intentional infliction of emotional distress, and violations of Magnolia city ordinances.[12] Plaintiff seeks injunctive relief (reinstatement to his former position and duties as a Magnolia police sergeant), damages for economic injury and harm to his personal and professional reputation, reimbursement for the costs of attending the communications course, reinstatement of any fringe benefits or lost seniority rights, exemplary damages, attorneys' fees, costs, interest, and a declaration that Defendants have violated his constitutional rights. Defendants move for summary judgment on all of Plaintiff's claims.

---

[11] Williams claims that while she was being informed about the charges during the August 10 meeting, Conklin smiled at her while dangling handcuffs.

[12] Although the Complaint also includes an assertion that Defendants violated the Texas Open Meetings Law, TEX. GOV'T CODE ANN. §§ 551.001 *et seq.*, and a claim under *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985), Plaintiff has withdrawn both of those claims in responding to the summary judgment motion.

## II. ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id*. However, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. *See, e.g.*, *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994); FED. R. CIV. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule . . . the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").[13]

---

[13] In reviewing the summary judgment materials, the Court has noted and considered Defendants' objections to the exhibits attached to Plaintiff's Response. The Court views the objections as going to the weight, rather than the admissibility, of the evidence.

7

### B. Section 1983 Claim

Plaintiff's Section 1983 claim stems from his assertion that Defendants violated his First Amendment and Due Process rights.[14] Because the Court finds that Conklin cannot demonstrate a constitutional violation, Defendants are entitled to summary judgment on Plaintiff's Section 1983 claim.

#### 1. First Amendment Claim

Plaintiff alleges that Defendants violated his rights under the First Amendment by retaliating against him for protected speech. In order to maintain a First Amendment retaliation claim, Plaintiff must show that: 1) an adverse employment action occurred; 2) his speech involved a matter of public concern; 3) his interest in commenting on matters of public concern outweighed the defendant's interest in promoting efficiency; and 4) his speech motivated the employer's adverse action. *E.g.*, *Modica v. Taylor*, 465 F.3d 174, 179-80 (5th Cir. 2006).

Defendants do not dispute that Plaintiff suffered at least one adverse employment action – his termination in June 2006. Indeed, although the Court need not determine this issue, Conklin likely suffered an adverse action when his duties were altered in July 2004. *See, e.g.*, *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405 (2006) (holding that an adverse employment action is not limited to an "ultimate employment decision" for the purposes of a Title VII retaliation analysis).

---

[14] Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983 (2006).

8

To turn to the second prong of the retaliation test, whether the employee's speech involved a matter of public concern, the Court must first identify the protected speech at issue. The Second Amended Complaint alleges that Defendants acted against Conklin "in retaliation for investigating and communicating about civil and criminal violations of law by the individual defendants herein who are members of the Magnolia City Council," Pl.'s Second Am. Compl. 8, apparently referring to Conklin's involvement in the City Hall and ATV theft investigations.

The Court notes initially that Plaintiff has not identified any speech made in connection with the City Hall investigation; Conklin does not appear to have been involved in any reporting associated with that inquiry. Therefore, the investigative speech at issue stems solely from the ATV theft incidents, which Conklin *did* report to the Montgomery County District Attorney's office at some point during the summer of 2004. The Supreme Court has recently held, however, that when public employees make statements pursuant to their official duties, their speech is not protected under the First Amendment, and they may be subjected to employer discipline. *Garcetti v. Ceballos*, 126 S.Ct. 1951 (2006) (holding that a deputy district attorney alleging that he suffered adverse employment actions in retaliation for writing a memorandum pursuant to his official duties was not speaking as a citizen and, thus, his speech was not protected by the First Amendment). The Court sees no basis to distinguish the investigative speech in this case from the speech in *Garcetti*. Therefore, Plaintiff has no cognizable retaliation claim based on his investigation of Williams.

In his response to the summary judgment motion, Plaintiff contends that Defendants' retaliatory conduct did not arise solely from the ATV theft investigation.

9

Rather, the response states that "Conklin, as a private citizen, spoke at city council and departmental meetings and voiced his concern over matters of public concern, specifically, inappropriate activities in the workplace, inappropriate meddling by defendants Williams and Chumley in police department and city matters, and, most importantly, lack of following proper procedures concerning the threatened termination of his employment." Pl.'s Resp. 17. By way of support, Plaintiff cites to general statements in various affidavits that he often publicly criticized Williams and Chumley.[15]

The Court observes first that it is questionable whether the affidavit evidence submitted meets the Rule 56 requirement to "set forth specific facts." FED. R. CIV. P. 56(e). More importantly, Plaintiff simply has not identified his allegedly protected speech with enough specificity to determine whether it involved matters of public concern. Plaintiff "is required to be specific as to when [his] statement or statements were made, to whom they were made, whether they were oral or written, and the content of those statements." *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 342 (5th Cir. 2003) (finding that a University employee's statement that she "engaged in protected speech by utilizing internal grievance procedures and filing charges with the Equal Employment Opportunity Commission" was insufficiently specific to state a First Amendment retaliation claim). Without precise identification of Plaintiff's speech, the Court cannot

---

[15] "[I]t is true and well known that I have been vocal, both privately and publicly, about my distrust and disapproval of certain council persons', and other officials', actions and motivations, including specifically Patsy Williams and Ronnie Chumley." Pl.'s Resp., Ex. A ¶ 9 (affidavit of Tom Conklin). "Sgt. Conklin frequently and publicly expressed his mistrust of Ronnie Chumley, Patsy Williams and other members of Magnolia government. Sgt. Conklin often stated, typically in person and in the presence of others, both at work and outside work, that he thought Patsy Williams and Ronnie Chumley pushed their weight around, poked their noses in where they didn't belong, and abused their power as City Council members." Pl.'s Resp., Ex. C ¶ 7 (affidavit of Jamie Hunt). "On several occasions prior to June 2004, I observed Conklin, often in the presence of several people, make comments about Patsy Williams and other members of City Council or city government, particularly with regard to public issues or city administration. Sgt. Conklin's statements were made at various places in various situations, sometimes when we were socializing, at public events, sometimes at work, sometimes off-duty or after work, both in person and by phone." Pl.'s Resp., Ex. E ¶ 8 (affidavit of Jerry Dowse).

consider "its content, context, and form as required by the Supreme Court." *Id.*, citing *Connick v. Myers*, 461 U.S. 138 (1983). For example, words spoken by Plaintiff at departmental or City Council meetings, if they touched upon police department operations, might well be covered by *Garcetti*. Further, a private, casual conversation during which Conklin criticized Williams and Chumley would likely fail to qualify as speech involving matters of public concern.[16]

While the Court does not doubt that critical words were exchanged by all parties, and perhaps on occasion in the presence of others, the Court cannot assume that those words rose to the level of speech involving matters of public concern without knowing more precisely their exact content and context. Because Plaintiff has failed adequately to identify the speech at issue, his First Amendment retaliation claim fails.

### 2. Due Process Claim

Plaintiff also asserts that his due process rights were violated by his demotion and termination. Plaintiff has not, however, identified a liberty or property interest that would trigger the protections of the due process clause. *See, e.g.*, *Wilkinson v Austin*, 545 US. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake.").

With regard to liberty interests, the Court must be governed by the Fifth Circuit's decision in *Bledsoe v. City of Horn Lake*, 449 F.3d 650 (5th Cir. 2006). Under *Bledsoe*, "a liberty interest is infringed, and the right to notice and an opportunity to clear one's name arises, only when the employee is discharged in a manner that creates a false and

---

[16] Without describing in more detail the content and circumstances of the alleged speech – for example, whether Williams and Chumley were present to hear the speech – it is also difficult to envision how Plaintiff would satisfy the causation element (step four) of the retaliation analysis.

11

defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities." *Id.* at 653 (internal quotation marks omitted).  In the present case, Conklin was discharged; however, under the "stigma-plus-infringement" test reiterated in *Bledsoe*, Conklin must also show that: 1) stigmatizing charges were made against him in connection with the discharge; 2) the charges were false; 3) he was not provided notice or an opportunity to be heard prior to the discharge; 4) the charges were made public; 5) he requested a hearing to clear his name; and 6) the employer denied the request.  *Id.*

It is immediately evident that Plaintiff cannot satisfy all the elements of the seven-step test.  Plaintiff has introduced absolutely no evidence showing that false, stigmatizing charges were made against him in connection with his termination, that such charges were made public, or that he was denied a requested name-clearing hearing.  *See id.* (holding that Bledsoe's failure to request a name-clearing hearing defeated his liberty interest claim).  Therefore, Plaintiff has not shown that he was deprived of any liberty interest.

Plaintiff has similarly failed to demonstrate that he was unconstitutionally deprived of any property interest.  Conklin does not dispute Defendant's contention that he was an at-will employee, and it is well settled that "employment at will is not 'property' for purposes of the Due Process Clause." *Haddie v. Garrison*, 525 U.S. 121, 125-26 (1998); *Bishop v. Wood*, 426 U.S. 341, 345-47 (1976); *Stidham v. Tex. Comm'n on Private Sec.*, 418 F.3d 486, 492 (5th Cir. 2005); *Farias v. Bexar County Bd. of Trs.*, 925 F.2d 866, 877 (5th Cir. 1991).  Therefore, because there appear to be no protectible

liberty or property interests in play, Conklin cannot state a claim for deprivation of federal due process.

Viewing the evidence in the light most favorable to Plaintiff, it is evident that Conklin simply cannot satisfy the elements of a First Amendment retaliation or federal due process claim. Therefore, the Court must grant summary judgment to Defendants on Plaintiff's Section 1983 claim.

### C. Immunity

Because Plaintiff cannot establish a constitutional violation, Defendants are entitled to summary judgment on his Section 1983 claim on that basis alone. In the alternative, however, Plaintiff's Section 1983 claim fails because he cannot establish municipal liability for Defendant City of Magnolia, and because Defendants Williams and Chumley have qualified immunity from suit.

#### 1. Municipal liability under Section 1983

A municipality may held liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). A city official may be found to be a "policymaker" for the purposes of municipal liability under Section 1983, but only if the governing body has given that individual policymaking authority. *Kentucky v. Graham*, 473 U.S. 159 (1985); *see also Neubauer v. McAllen*, 766 F.2d 1567, 1573-74 (5th Cir. 1985) (finding that only the City Manager had policymaking authority, expressly conferred by the city code and personnel policies and procedures manual); *Bennett v. City of Slidell*, 728 F.2d

762, 769 (5th Cir. 1984) (en banc) ("The governing body must expressly or impliedly acknowledge that the agent . . . acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility . . .").

Plaintiff has introduced almost no evidence tending to show that either Williams or Chumley had sufficient policymaking authority to expose Defendant City of Magnolia to liability under Section 1983. Plaintiff states only that "it is evident that it was defendant City of Magnolia's persistent, widespread custom to allow certain city council members, namely Williams and Chumley, to advance their personal agendas through their positions on the city council and deprive plaintiff of his constitutional rights." Pl.'s Resp. 22. The affidavits to which Plaintiff point are similarly devoid of any specific references or facts demonstrating either that Plaintiff's termination resulted from an official policy or widespread practice, or that sufficient policymaking authority had been delegated to Williams or Chumley. Therefore, Defendant City of Magnolia cannot be held liable on Plaintiff's Section 1983 claim.

### 2. Qualified immunity of Defendants Williams and Chumley

Finally, Defendants Williams and Chumley have qualified immunity from suit under Plaintiff's Section 1983 claim. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For the reasons discussed above, Plaintiff has not stated a violation of a clearly established constitutional right. Plaintiff's investigative speech was not protected, under *Garcetti*; he has not sufficiently described any other speech that that might deserve First

Amendment protection; and he has not identified any liberty or property interest that would have triggered due process protections. *See supra* Part II.B. Therefore, Plaintiff cannot survive step one of the immunity analysis, and the Court need not examine the objective reasonableness of Defendants' actions.

### D. State Law Claims

Most employment disputes involve high emotions, particularly ones that play out in a small community and against a backdrop of public scrutiny. Critical words and damaged reputations, however, do not always rise to the level of constitutional injury. Plaintiff may well be able to seek redress in a different forum. Because summary judgment has been granted to Defendants on Plaintiff's Section 1983 claim, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state law causes of action.

## III. CONCLUSION

Defendants' Motion for Summary Judgment is **GRANTED**. Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 5th day of February, 2007.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**